IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

LARRY DENTON and KATHLEEN, HARRISON [Family: Smith], *in esse*,

Plaintiffs,

v.

U.S. BANK, N.A., individually, and as Trustee for The Registered Holder of ASSET BACKED SECURITIES CORPORATION HOME EQUITY LOAN TRUST, Series 2005-HE1 Asset Backed Pass-Through Certificates, Series 2005-HE1; SAXON MORTGAGE SERVICES, INC., Individually and as agent; OCWEN LOAN SERVICING, LLC, individually and as agent; JOHN and JANE DOES 1-100, inclusive, Individuals yet to be determined, if any, also, Involved in the real estate loan and/or creation or Maintenance of the security pool involved in this Case; ABC/DOE CORPORATIONS, corporations, Partnerships, or other entities yet to be determined, If any, also, involved in the real estate loan and/or creation or maintenance of the security pool involved in this case,

Defendants.

Civ. No. 10-3077-CL

REPORT & RECOMMENDATION

CLARKE, Magistrate Judge.

This matter comes before the court on motions to dismiss filed by defendants U.S. Bank National Association, as Trustee for the Registered Holder of Asset Backed Securities Corporation Home Equity Loan Trust, Series 2005-HE1 Asset Backed Pass-Through Certificates, Series 2005-HE1 ("U.S. Bank as Trustee") and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "the U.S. Bank Trustee defendants") (#114); U.S. Bank, National Association, in its individual capacity ("U.S. Bank") (#120)[1]; and Saxon Mortgage Services, Inc. ("Saxon") (#118). Also before the court is plaintiffs' "Motion for Abatement, Pending Attempt to Reach Settlement With All Parties In the Case, Declaration" (#139). For the reasons stated below, defendants' motions should be GRANTED, plaintiffs' motion should be DENIED, and this case should be DISMISSED WITH PREJUDICE.

**BACKGROUND**

The dispute in this case concerns property located at 2036 Pleasant Creek Road, Rogue River, Oregon ("the Pleasant Creek property"). *Pro se* plaintiffs Larry Denton Smith and Kathleen Harrison Smith ("Plaintiffs" or "the Smiths") originally filed this action against defendant U.S. Bank, Trustee, on July 7, 2010, in Jackson County Circuit Court for the State of Oregon, Larry Denton and Kathleen Harrison [Family:Smith] v. U.S. Bank, N.A., as trustee, Civil Case No. 10-3372-Z3. (#1, Ex. 1, pp. 2-3). U.S. Bank, Trustee, timely removed the action to this court on August 16, 2010, and moved to dismiss (#5). On October 18, 2010, plaintiffs filed both their response in opposition (#12, 13) and a First Amended Complaint ("FAC") (#15) adding three new corporate defendants, eight individual defendants, and John and Jane Does 1-500. U.S. Bank, Trustee, subsequently withdrew (#18) its motion (#5) to dismiss.

[1] U.S. Bank filed its original motion to dismiss (#116) on July 26, 2011. That motion is superseded and replaced by the corrected motion to dismiss (#120) filed July 28.

The matter came before the court various motions filed by the defendants (#19, 44, 50, 53, 69, 77, 86) and the Smiths, (#82). On April 22, 2011, this court recommended (#98) plaintiffs' complaint be dismissed as to all defendants. On May 10, 2011, the Smiths filed a Second Amended Complaint ("SAC") (#100) in place of filing objections to the recommendation. On June 20, 2011, Judge Panner adopted this court's recommendation and ordered (#103) the Smiths' claims under HOEPA, RESPA, and TILA dismissed with prejudice, the remainder of the Smiths' claims dismissed without prejudice, and the Smiths' SAC (#100) instated as the operative complaint (#104) in the action.

The SAC (#104) alleges claims for racketeering, conspiracy, and extortion in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") and a claim for common law fraud in inducement. It consists of 20 typewritten pages and seven exhibits (Exhibits L through R) totaling 62 pages. The Smiths incorporate by reference two exhibits (Exhibits A and B) filed as attachments to the FAC, totaling an additional 23 pages. The SAC blends factual allegation with citations to certain public documents and extended quotations from a document titled "Securitization Research Commentary," submitted as Exhibit R. The identifiable factual allegations are as follows:

On or about November 18, 2004, the Smiths used their home to secure a $183,000 mortgage loan from lender New Century Mortgage Corporation ("New Century"), evidenced by a promissory Note and secured by a Deed of Trust ("DOT"). (SAC, ¶ 1 & Exs. A, B). The Note identifies New Century as the lender and acknowledges that New Century "or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'" with monthly payments due the first day of each month beginning January 1, 2005. (Id., ¶ 1 & Ex. A). The DOT securing the Note was recorded November 29, 2004, in the official

records of Jackson County as document number 2004-069080. (Id., ¶ 1 & Ex. B). It identifies the "Lender" as New Century and the "Trustee" as First American Title. (Id., Ex. B at 1). The DOT explicitly provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to [the Smiths]," and provides that the Smiths would receive notice if the entity charged with collecting payment on their loan changed, whether or not related to the sale of the Note. (Id. at 11, ¶ 19).

On February 4, 2005, the Smiths received notification from New Century that the servicing of their loan had been assigned, sold or transferred to Saxon effective February 24, 2005. (Id., ¶ 2 & Ex. L). Thereafter, the Smiths received monthly statements from Saxon demanding payment on the mortgage loan, and made payments to Saxon from February 24, 2005, through October 30, 2005. (Id., ¶ 44).

On September 21, 2009, the Smiths sent Saxon a letter requesting answers to three questions: (1) whether Saxon was the Note holder or the servicer; (2) if Saxon was the servicer, requesting the identity and contact information for the Note holder; and (3) if Saxon was the Note holder, requesting a copy of the Note. (Id., ¶ 3 & Ex. M). In response to this request, the Smiths received a letter from Saxon dated October 30, 2009, advising that (1) Saxon was the mortgage servicer; (2) the Smiths mortgage loan had been pooled and securitized and was currently held in trust by U.S. Bank, Trustee; and (3) providing a copy of the Smiths' original Note. (Id., ¶ 4 & Ex. N). The copy of the Note was unaltered; that is, "[t]here was no assignment anywhere on the NOTE from NEW CENTURY to U.S. Bank National Association, as Trustee or directly to its alleged principal, i.e. the 'Registered Holder' of the alleged trust." (Id., ¶ 4). At approximately the same time, the Smiths received a second letter from Saxon, also

dated October 30, 2009, advising that the servicing of their mortgage was being transferred from Saxon to Ocwen effective November 16, 2009. (Id., ¶ 5 & Ex. O).

The Smiths subsequently received a notification from Ocwen dated November 19, 2009, advising that Saxon had assigned, sold, or transferred the servicing of the Smiths' mortgage loan to Ocwen effective November 16, 2009. (Id., ¶ 6 & Ex. P). Beginning November 2009, Ocwen sent the Smiths monthly statements demanding payment on the mortgage loan. (Id., ¶ 47). On or about March 23, 2010, the Smiths received another letter from Ocwen which enclosed a copy of the Smiths' original Note and DOT. (Id., ¶ 7). These original copies were unaltered; that is, "there was no assignment anywhere on the NOTE from NEW CENTURY to U.S. Bank National Association, as Trustee or directly to its alleged principal, i.e. the 'Registered Holder' of the alleged trust" and "there is no indication as to what consideration, if any, U.S. BANK or its alleged principal tendered to meet the requirements of a 'holder in due course.'" (Id.).

On or about June 16, 2010, the Smiths sent a letter to U.S. Bank, Trustee, Ocwen, Saxon, and other individual and corporate entities not named as parties to this action. (Id., ¶ 8 & Ex. Q). In this letter, the Smiths advised they were suspending all future payments on their mortgage loan pending receipt of "proof the transactions contained in, about, from, or because of the original mortgage loan are and have been conducted under GAAP, and that U.S. Bank, N.A., as Trustee, or its alleged principal is the current Owner and Holder in Due course of our original 'wet ink' signature Promissory Note." (Id., Ex. Q at 1). The letter relays the general history of the Smiths' mortgage loan and demands answers and supporting proof to a number of questions, including: (1) why there is no recorded assignment at the Jackson County recorder's office showing that the servicing of their mortgage was transferred to Ocwen; (2) how Ocwen acquired the servicing rights to their mortgage; and (3) whether the right to service their mortgage was

transferred, sold, or assigned from Saxon to Ocwen, who authorized that transaction and pursuant to what authority. (Id. at 2-4). The Smiths conclude by demanding to "visually inspect" the "wet ink" signature Note and DOT, along with duly authenticated copies of the following documents: 1099 OID report, S-3 registration statement, and FR 2046 balance sheet. (Id. at 4-5). These documents pertain to, respectively: the reporting of taxable interest resulting from a bond or debt instrument being issued at a price below par (original issue discount); a security registration form used to register securities under the Securities Act of 1933; and balance sheet data which the Federal Reserve is authorized to collect from discount window borrowers. The original Note was made available but the Smiths declined to inspect it. (Am. Compl., ¶ 49).

The Smiths allege their mortgage loan has been "sold, re-sold, transferred, securitized, pooled in investment tranches, or otherwise assigned in the mortgage derivatives financial markets" and is part of a "securitized mortgage pool" covered by a Sale and Service Agreement ("SSA") dated February 1, 2005. (Id., ¶¶ 10, 38). The SSA identifies U.S. Bank as the "trustee" and Saxon as the "servicer." (SSA, *available online at* http://www.sec.gov/Archives/edgar/data/1316628/000116231805000221/m499718psa.htm). Section 3.01 of the SSA charges the servicer with "maximiz[ing] the timely and complete recovery of principal and interest" on the securitized mortgages, and specifically authorizes the servicer to institute foreclosure proceedings if necessary. (Id.) Section 3.02 of the SSA permits the servicer to enter into sub-servicing agreements for the servicing and administration of the securitized mortgages. (Id.). Section 8.01 of the SSA limits the trustee's duties to those specifically set forth in the SSA. (Id.). The Smiths allege that as the result of the sale and securitization of their mortgage, they are unable to identify the beneficiary of their mortgage

loan, and that in any event any such beneficiary has been paid in the event of a default of their Note or "has had their respective investment pool and tranches" paid through insurance payments "by 'unidentified persons or entities' (the 'AIG's of this world'), or a federal government bail out entity.'" (Am. Compl., ¶¶ 41-43).

The Smiths also offer as fact extended excerpts from a "Securitization Research Commentary" ("SRC") obtained through LuminaQ and authored by Neil Garfield, an attorney licensed to practice in Florida who they asserts is a "nationally recognized expert in mortgage securitization." (Id., ¶¶ 15-20 & Ex. R). A review of the SRC reveals that this document consists primarily of a general commentary regarding the practice of mortgage securitization accompanied by Garfield's opinion "as an expert in securitization" regarding the significance of these practices with respect to the Smiths' mortgage loan, none of which are properly offered as fact. To the extent that the Smiths rely on and refer to the SRC in the SAC, the court deems those references to be legal arguments and considers them accordingly.

## STANDARD

### I. Rule 12(b)(1)

A motion to dismiss under Federal Rules of Civil Procedure ("Rule") 12(b)(1) tests the subject matter jurisdiction of the court. *See, e.g.*, Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th Cir. 2003). Under Article III of the Constitution, federal judicial power extends only to "Cases" and "Controversies." U.S. CONST., art. III, § 2, cl. 1. Article III standing is thus a threshold requirement for federal court jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60, 112 S.Ct. 2130 (1992). At a constitutional minimum, standing requires the party invoking federal jurisdiction to establish three elements: (1) injury in the form of an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) the likelihood, not mere speculation, that a favorable decision will redress the injury. Id. at 560-61 (internal citations and quotation marks omitted). The party invoking federal jurisdiction bears the burden of establishing these elements. Id. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presumes that general allegations embrace those specific facts that are necessary to support the claim." Id. (internal citations and quotation marks omitted).

## II. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, -- U.S. --, --, 129 S.Ct. 1937, 1949 (2009). While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 544, 555.

The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See* Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012 (1984). In answering this question, the court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the

plaintiff's favor. *See* Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citation and quotation marks omitted).

Furthermore, a complaint which includes allegations of fraud is subject to the heightened pleading requirements of Rule 9(b), which requires more specificity including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal citation and quotation marks omitted).

"Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (*citing* Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972)). Where a plaintiff is proceeding pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *See* Bernhardt v. Los Angeles Cnty., 339 F.3d 920, 925 (9th Cir. 2003) (internal citations omitted). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.1982).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if

no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (*quoting* Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)).

**DISCUSSION**

The general gist of the Smiths' SAC is that as the result of the sale and securitization of their mortgage long, their obligation to repay the mortgage loan according to the terms of the Note and DOT has been extinguished. Defendants move to dismiss the SAC for lack of standing pursuant to Rule 12(b)(1) and for failure to state a plausible claim for relief pursuant to Rule 12(b)(6). For the following reasons, the motions to dismiss should be granted and the Smiths' Second Amended Complaint should be dismissed with prejudice.

**I. Standing**

The Smiths have failed to allege sufficient facts to establish that they have standing to bring any claim against U.S. Bank. The SAC's caption identifies the U.S. Bank as a defendant both in its individual capacity and as Trustee but fails to otherwise distinguish between these two defendants. The only identifiable allegation of fact with respect to U.S. Bank is that it is acting as Trustee of the securitized mortgage pool which allegedly includes the Smiths' mortgage loan. (Am. Compl., ¶ 4). As Trustee, U.S. Bank is alleged to assert an interest in the Smiths' mortgage loan, in particular the right to collect monthly payments and to foreclose in the event of default. There is no indication that U.S. Bank in its individual capacity asserts any similar claims, and U.S. Bank affirmatively disclaims any such interest. (Mem. of Law iso Mot. by Def. U.S. Bank

in its Individual Capacity to Dismiss Pls' Second Am. Compl., Dckt. # 117, pp. 3). Thus, to the extent U.S. Bank is connected to this case, it is by virtue of its representative capacity as Trustee. The Smiths have therefore failed to bear their burden of establishing that they have suffered an injury in fact, caused by the conduct of U.S. Bank, which will likely be redressed by a favorable decision. Lujan, 504 U.S. at 560-61. U.S. Bank is therefore not a proper defendant in this action and must be dismissed.

## II. Common Law Fraud

The Smiths fourth cause of action alleges common law fraud in inducement. This claim is premised on the allegation that Saxon and Ocwen failed to account for payments made on the Smiths' mortgage loan, concealed payments made by third parties, and concealed that they had no lawful or contractual authority to collect payment on the loan, and instead presented the Smiths with monthly mortgage statements showing a balance owed on the loan and a monthly payment due, as a result of which the Smiths were "duped" into making payments on their mortgage loan. U.S. Bank as trustee allegedly participated by "direct[ing], supervis[ing], or directly or indirectly assent[ing]" to Saxon's fraudulent representations.

### Standard

Under Oregon law, the elements of a fraud claim are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) intent that the recipient act on it in a manner reasonably contemplated; (6) the recipient's ignorance of its falsity; (7) reliance on its truth; (8) the recipient's right to rely on it; and (9) consequent and proximate injury. Or. Pub. Employees' Ret. Bd. v. Simat, Helliesen & Eichner, 191 Or. App. 408, 423-24, 83 P.3d 350 (2004) (*citing* Conzelmann v. Nw. Poultry & Dairy Prod. Co., 190 Or. 332, 350, 225 P.2d 757 (1950)). Silence or nondisclosure may result in an actionable claim for

fraud. Wieber v. FedEx Ground Package Sys., Inc., 231 Or. App. 469, 484, 220 P.3d 68 (2009) (internal citation omitted); Ogan v. Ellison, 297 Or. 25, 34, 682 P.2d 760 (1984). Where a plaintiff pleads fraud based on silence or nondisclosure, she must demonstrate that the defendant either (1) remained silent when they had a duty to speak, or (2) assumed the obligation to make a full and fair disclosure of the whole truth by making a representation in the nature of a "half-truth." Gregory v. Novak, 121 Or. App. 651, 654-55, 855 P.2d 1142 (1993).

**Discussion**

The Smiths' fraud claim fails because they fail to allege sufficient facts to establish that any defendant made a false representation. The facts alleged establish that: (1) the Smiths took out a mortgage loan that entitled the New Century to monthly payments; (2) the Smiths would be notified of any change to the identity of the mortgage servicer responsible for collecting the monthly payments on their loan; (3) the Smiths received the required notice when Saxon was designated as the servicer of their mortgage loan, and again when the servicing of their loan was assigned to Ocwen; (4) the Smiths' mortgage loan could be sold one or more times without prior notice to the Smiths, in which case the buyer of the loan would be entitled to monthly payments under the terms of the Note; (5) the Smiths' mortgage loan was sold; and (6) the Smiths' mortgage loan was pooled with other mortgages and securitized under an agreement designating Saxon as the servicer, charging Saxon with the responsibility to collect payment on the loan, and authorizing Saxon to enter into agreements with sub-servicers for the servicing and administration of the Smiths' loan. Nothing in these facts suggests or supports the conclusion that either Saxon or Ocwen committed fraud by sending the Smiths' monthly mortgage statements in an attempt to collect payment on the Smiths' mortgage loan. To the contrary, these

facts establish that Saxon and Ocwen were legally entitled and contractually obligated to collect these payments.

To the extent that the Smiths argue that these collection attempts were fraudulent because their obligation to repay their mortgage loan had been extinguished as the result of payments by third parties, their fraud claim fails to meet the heightened pleading requirements of Rule 9(b). First, the Smiths refer only vaguely to the span of time that they received monthly statements showing payments due on their mortgage loan, starting February 2005 and continuing through at least November 2009, thus they fail to sufficiently plead "when" the allegedly fraudulent misrepresentation occurred. *See generally* Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1273-74 (C.D. Cal. 2010) (collecting cases); *see also* Atl. Richfield Co. v. Ramirez, 176 F.3d 481 (9th Cir. 1999) (unpublished opinion) (allegation that misrepresentation occurred in late 1990 or early 1991 merely identified a period spanning several months and did not adequately identify the time of the misrepresentations).

Second, the Smiths merely assert without identifying any actual facts that their mortgage loan has been paid from one or more sources, therefore no defendant may collect the payments owed on the debt evidenced by their Note and DOT. This is a wholly conclusory legal allegation which the court is not required to accept. The Smiths have therefore failed to sufficiently plead "how" and "why" the mortgage statements received from Saxon and Ocwen showing that a balance was owed and payment was due on their mortgage loan was fraudulent. In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (plaintiff must explain why a statement or omission is false or misleading by identifying what is false or misleading and why it is false or misleading), *superseded by statute on other grounds as stated in* Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp 1297 (C.D.Cal. 1997). The only allegation with

respect to U.S. Bank as Trustee is that it participated in the fraud by "providing incentives for and regularly and knowingly accepting the 'fruits of the fraud'" and by "direct[ing], supervis[ing], or directly or indirectly assent[ing] to" Saxon's allegedly fraudulent acts. (Am. Compl., ¶ 84-85). Again, these are wholly conclusory allegations devoid of any actual fact, and the court is not required to accept them.

For the reasons stated above, the Smiths have failed to state a plausible claim for fraud. The Smiths have been afforded the opportunity to amend this claim and were cautioned by the court that failure to support this claim with specific factual allegations would result in dismissal of that claim with prejudice. The Smiths' persistent belief that their obligation to repay their mortgage loan has been extinguished as the result of its sale and securitization is unsupported by any identifiable legal theory, and granting leave to amend a second time to allege additional facts would be futile. The court therefore recommends this claim be dismissed with prejudice as to all defendants.

**III. RICO Claims**

The Smiths allege three claims under RICO: (1) "Civil RICO" in violation of 18 U.S.C. § 1962(c); (2) "RICO Conspiracy" in violation of 18 U.S.C. § 1962(d); and (3) "RICO Extortion" in violation of 18 U.S.C. 1962(c). Based on these claims, it appears that the Smiths are attempting to allege: (1) a substantive RICO offense under § 1962(c), including extortion as an alleged act of racketeering; and (2) conspiracy to violate RICO under § 1962(d).[2] For the following reasons, the Smiths fail to state a plausible claim for relief under RICO.

---

[2] The mechanism of RICO can be summarized as follows: Section 1962 makes it illegal for a person to (1) invest the proceeds of a "pattern of racketeering activity" in an "enterprise" that effects interstate commerce, 18 U.S.C. § 1962(a); (2) to acquire or maintain an interest or control in any such "enterprise" through a "pattern of racketeering activity," 18 U.S.C. § 1962(b); (3) to conduct the affairs of an "enterprise" through a "pattern of racketeering activity," 18 U.S.C. § 1962(c); and (4) to conspire to do any of the above acts, 18 U.S.C. § 1962(d). Extortion does not

**A. Substantive Violations of RICO**

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (*citing* Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481, 105 S.Ct. 3275 (1985)). "Racketeering activity" is defined to include both certain enumerated acts "chargeable under State law and punishable by imprisonment for more than one year" and certain acts indictable under several provisions of Title 18 of the United States Code. 18 U.S.C. § 1961(1). These acts are commonly called "predicate acts."

Here, the Smiths have failed to allege sufficient facts to demonstrate any predicate acts. This is fatal to their claim. To be sure, the definition of racketeering activity contained in § 1961 includes extortion punishable under state law by imprisonment for more than one year, as well as violation of those provisions of Title 18 of the United States Code listed in paragraph 57 of the SAC: § 1341, relating to mail fraud; § 1343, relating to wire fraud; § 1344, relating to fraud committed upon a financial institution; § 1951, relating to the interference with commerce by robbery or extortion; § 1956, relating to laundering of monetary instruments; and § 1957, relating to engaging in monetary transactions in property derived from specified unlawful activity. However, the Smiths do not allege any facts suggesting that any defendant has committed extortion in violation of state law or has violated 18 U.S.C. §§ 1344, 1951, 1956, or 1957, nor is there any suggestion that they could do so.

To the extent that the Smiths' allege, as predicate acts of racketeering activity, mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, those claims are subject to the heightened pleading requirements of Rule 9(b). Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940

---

constitute a substantive violation of RICO, rather, it is an act which may be considered "racketeering activity" under RICO.

F.2d 397, 405 (9th Cir. 1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168 (1992). The sole allegation regarding the use of wires or mail by any defendant pertain to the notices received regarding changes to the servicer of the Smiths' mortgage loan and the monthly mortgage loan statements received from Saxon and Ocwen showing an outstanding balance due and payment owed. As described above, the facts alleged establish that Saxon was assigned the right to service the Smiths' mortgage loan and had the authority to enter into a sub-servicing agreement with Ocwen for the servicing and administration of the loan. Furthermore, the court has determined that the Smiths have failed to allege sufficient facts to establish a plausible claim that these mortgage statements were fraudulent. Therefore, the Smiths may not establish mail fraud based on the mailing of these statements.

**B. Conspiracy In Violation of RICO**

Section 1962(d) of RICO prohibits the act of conspiring to violate §§ 1962(a)-(c). Although a civil RICO conspiracy claim can survive even if the substantive RICO claim does not, where the plaintiff has failed to allege the requisite substantive elements of RICO, a RICO conspiracy claim cannot stand. Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000) (internal citation omitted); Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n. 8 (9th Cir. 1992). As described above, the Smiths have failed to state a substantive RICO claim, therefore, the Smiths' RICO conspiracy claim must be dismissed as well.

**Conclusion**

The Smiths have been afforded the opportunity to amend their claims under RICO, were cautioned by the court that failure to support this claim with specific factual allegations would result in dismissal with prejudice and were further warned that any RICO claim alleging fraud as the predicate act would be subject to the heightened pleading requirements of Rule 9(b). The

Smiths have again failed to allege key elements of their RICO claims in their SAC. Because the Smiths have had ample opportunity to state a claim under RICO, as well as instruction from the district court, there is no reason to believe that granting the Smiths another opportunity to amend their complaint would cure the deficiency. Accordingly, it is recommended that the Smiths' RICO claims be DISMISSED WITH PREJUDICE.

**IV. Plaintiffs' Motion to Abate Pending Settlement**

Plaintiffs' motion, filed October 24, 2011, is supported by a one page declaration signed by plaintiff Lary Denton Smith, in which he alleges he sent a settlement proposal to defendants on October 21, 2011, that he is awaiting defendants' responses, and that he has been unable to confer with defendants regarding the proposal due to "personal demands" related to plaintiff Kathleen Harrison Smith's failing health, and requesting that the court hold defendants' motions to dismiss in abeyance until defendants' responses are received. Plaintiffs' motion fails to comply with the certification requirements under Local Rule 7.1, and may be denied for that reason alone. L.R. 7-1(a)(2). The court finds no reason to further delay resolution of this case and therefore recommends plaintiffs' motion be DENIED.

**RECOMMENDATION**

For the reasons stated above, plaintiffs' motion (#139) should be DENIED; the motions filed by the U.S. Bank Trustee defendants (#114), U.S. Bank (#120), and Saxon (#118) should be GRANTED; and this case should be DISMISSED WITH PREJUDICE.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*** Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. ***Objections to this Report and Recommendation, if any, are due by November 14, 2011. If objections are filed, any response to the objections is due by December 1, 2011.*** *See* FED. R. CIV. P. 72, 6.

DATED this 26 day of October, 2011.

MARK D. CLARKE
United States Magistrate Judge